**VIRGINIA:**

FILED
CIVIL INTAKE

2019 DEC 20  PM 12: 51

JOHN T. FREY
CLERK, CIRCUIT COURT
FAIRFAX, VA

IN THE CIRCUIT COURT OF FAIRFAX COUNTY

FILSAN DUALE )
                    Plaintiff, )
                              )
        v. )
                              )
                              )   Case No. _____ **2 0 1 9    1 7 2 5 1**
COLONEL EDWIN C. ROESSLER JR. )
Fairfax County Chief of Police )
Fairfax County Police Department )
4100 Chain Bridge Road )
Fairfax, Va 22030 )
                              )
                              )
Fairfax County Police Department )
4100 Chain Bridge Road )
Fairfax, Va 22030 )   **JURY TRIAL DEMANDED**
                              )
                              )
SGT. JOE SHOEMAKER    *a/k/a Joshua* )
Fairfax County Police Department    *Shoemaker* )
4100 Chain Bridge Road )
Fairfax, Va 22030 )
                              )
                              )
BRANDON VINSON )
Last known address: )
1805 Fox Street, #201 )
Adelphi, MD 20783 )
                              )
                              )
JOHN DOE POLICE OFFICER 1, )
Fairfax County Police Department )
4100 Chain Bridge Road )
Fairfax, Va 22030 )
                              )
                              )
JOHN DOE POLICE OFFICER 2, )
Fairfax County Police Department )
4100 Chain Bridge Road )
Fairfax, Va 22030 )
                              )
                              )
JOHN DOE POLICE OFFICER 3, )
Fairfax County Police Department )
4100 Chain Bridge Road )
Fairfax, Va 22030 )
                              )
                              )
JOHN DOE POLICE OFFICER 4 )
Fairfax County Police Department )

1

EXHIBIT 1

| | |
|---|---|
| 4100 Chain Bridge Road | ) |
| Fairfax, Va 22030 | ) |
| | ) |
| JOHN DOE POLICE OFFICER 5 | ) |
| (SUPERVISOR) | ) |
| Fairfax County Police Department | ) |
| 4100 Chain Bridge Road | ) |
| Fairfax, Va 22030 | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW Plaintiff Filsan Duale ("Duale" or "Plaintiff"), by undersigned counsel, and for her Complaint states the following:

## NATURE OF THE ACTION

1.     On December 27, 2017, at approximately 8:00 p.m., Fairfax County Police Department officers acting with reckless disregard for the public safety engaged in a dangerous and grossly negligent police chase of a pickup truck driven by Defendant Brandon Vinson. The indifference to public safety was so egregious as to shock the conscious.

2.     Defendant Shoemaker and police vehicles driven by John Doe Police Officers ("JDPO") 1, 2, 3 and 4 began to chase the car and trailer being driven by Vinson based solely upon their belief that Vinson had run a red light.   Upon information and belief, the officers involved were never told that Vinson was a dangerous individual or that he had been involved in a violent crime.

3.     Defendant Shoemaker and police vehicles driven by JDPO 1-4 chased the truck and trailer being driven by Vinson for nearly ten miles in the dark at unreasonably excessive speeds, and in and through traffic in which Vinson and numerous officers ran multiple red lights.

Despite the fact that surrounding police jurisdictions, likely recognizing the obvious danger to the public, declined to join the chase, and despite the fact that the public was endangered by the chase weaving in and out of traffic at high speed, Defendant Fairfax County Police Department ("FCPD") and its officers (Defendant Shoemaker and JDPOs 1-4, continued the chase until the predictable, disastrous consequences occurred. Specifically, with the aforementioned FCPD officers, and perhaps others in close pursuit, Vinson crashed into the van Duale was driving, in which her four children and a fifth child were riding.

4. Duale, after having waited and ensuring she had a green light, entered an intersection when the pickup truck and trailer that FCPD was chasing, which was being driven by Vinson, smashed into Duale's van causing severe injuries to Duale and others in her van. After being hit the van was pushed down the road by the vehicle Vinson was driving, and Duale's oldest daughter ("AD") was ejected from the van in Mrs. Duale's presence. AD suffered a traumatic brain injury, severe injuries to her face, loss of the use of one eye, was in a coma for three weeks and required extensive rehabilitation, which is ongoing. The other children were hurt during the crash as well, some requiring extended hospitalization. Duale herself suffered substantial physical injuries including a serious fracture of her left wrist. This physical injury was in addition to the emotional damages she suffered, and continues to suffer, as a result of the crash, which include the severe and devastating injuries to her children and her passenger in her presence and the aftermath.

5. The impact of these injuries will linger far into the future and impact Ms. Duale and her family's lives forever. The Defendants' reckless, conscious disregard for the safety of the public was the direct proximate cause of these foreseeable injuries.

3

6.     Indeed, the FCPD's officers and Defendant Shoemaker's pursuit constituted a deliberately indifferent disregard of public safety and actionable grossly negligent conduct. The FCPD and Shoemaker had numerous opportunities to safely cease the police vehicle chase but consciously chose not to do so even though they admit that the chase was 1) only instituted because of a simple traffic violation, 2) the chase involved high speeds well in excess of the posted speed limit, 3) the chase occurred at night with limited visibility, 4) the chase occurred on a busy road with members of the public present, 5) the chase had already involved multiple instances of Vinson and officers ignoring and speeding through red lights as they crossed through busy intersections, and 6) other jurisdictions had affirmatively declined to join such a pursuit.

7.     Indeed, despite the fact that a FCPD helicopter was present on the scene and could have followed Vinson's vehicle without the need for a high speed vehicle chase with its intendant high risk of injury to the public, FCPD officers ignored reasonable police standards and continued to pursue Vinson's vehicle for ten miles even after multiple attempts to stop Vinson failed. These attempts included laying down tracks to puncture Vinson's tires and attempts to box Vinson's vehicle in at red lights. When these efforts failed, FCPD officers led by Defendant Shoemaker continued the pursuit through numerous red lights, at excessive speeds, and with increasingly heavy traffic until the entirely predictable and devastating crash occurred with the innocent occupants of the van suffering severe injuries.

## JURISDICTION AND VENUE

8.     This action is a civil case seeking to recover in excess of $25,000. As a result, this Court has original and exclusive subject matter jurisdiction over this case pursuant to Virginia Code Section 17.1-513.

9. All of the FCPD Defendants in this case have their principal place of employment in Fairfax County, Virginia. Defendant Vinson, at the time of the incident, was a resident of Adelphi, Maryland. All of the causes of action alleged in this case arose in Fairfax County, Virginia. As a result, venue is appropriate in this Court pursuant to Virginia Code Section 8.01-262(4).

## PARTIES

10. Ms. Filsan Duale is a resident of Herndon, Virginia. Duale resides at 13186 Dashco Way, Herndon, Virginia 20171.

11. Upon information and belief, Defendant Colonel Edwin C. Roessler Jr. was at all relevant times the Chief of Police of the FCPD charged with the responsibility of training and developing training methods and policies and procedures for the FCPD regarding police chases and pursuits and for properly supervising members of the FCPD.

12. Sgt. Joe Shoemaker ("Shoemaker") is a police officer employed by the Fairfax County Police Department.

13. The Fairfax County Police Department ("FCPD") is the primary law enforcement agency of Fairfax County, Virginia.

14. Brandon Vinson ("Vinson") was at all times relevant a resident of Adelphi, Maryland. At the time of the incident described herein, his conduct occurred in the Commonwealth of Virginia on its public roadways.

15. John Doe Police Officer 1 (officer behind Shoemaker), John Doe Police Officer 2 (officer behind Shoemaker), John Doe Police Officer 3 (officer behind Shoemaker), John Doe Police Officer 4 (K-9 unit), John Doe Police Officer 5 (supervisor of Shoemaker) (collectively referred to as "JDPOs") are each police officers employed by the Fairfax County Police

5

Department and participated in the high speed pursuit of Defendant Vinson that ended with the incident described herein. Despite their active participation in the pursuit, the JDPO names do not appear in the public record, but will be substituted once they are disclosed in discovery. Their identities and participation in the chase are known to the FCPD, Chief Roessler, Defendant Shoemaker and themselves.

16.     Defendants Roessler, Shoemaker, and JDPOs 1-5 are each named and sued herein in their official capacities and individually.

## STATEMENT OF FACTS

### The Events of December 27, 2017 Carried Grave Consequences for Plaintiff

17.     On December 27, 2017, Defendant Shoemaker observed a pick-up truck with a large trailer drive across Lee Highway from Stone Road and run a red light heading northbound.

18.     Defendant Shoemaker, in his police vehicle, began his pursuit of the pickup truck solely based upon his observing a traffic violation, specifically running a red light.

19.     The pick up truck with a large trailer was, at all relevant times, driven by Defendant Brandon Vinson.

20.     During a preliminary hearing for Vinson's criminal proceedings related to the chase, Defendant Shoemaker testified that "I observed the vehicle drive across Lee Highway from Stone Road and run a red light. So I attempted to conducted [sic] a traffic stop due to the red light violation." Exhibit A at 4. Shoemaker testified that this occurred at Route 29 at Stone Road, in Fairfax County. *Id.*

21.     Defendant Shoemaker began traveling north on Stone Road following Vinson without his lights on.

22.     Defendant Shoemaker testified that "I followed for a little bit. I was going to another call at the time and so I followed just for a very short distance and I initiated – and I decided, you know, this was a blatant disregard of a red light, because it had turned green in my direction, which I was turning left onto Stone Road. It was red for him for quite a bit of time before the vehicle went through it, so it was a blatant disregard of the red light." Exhibit A at 6.

23.     Defendant Shoemaker then maneuvered his patrol car behind Vinson's vehicle, turned on his lights, and attempted to pull over Vinson's truck, but Vinson did not comply. As noted, the vehicle Vinson was driving was pulling a trailer.

24.     Defendant Shoemaker testified that at first "I wasn't sure if he was just trying to find a better location to pull over, just, you know, to get a little more room for the size of the vehicle with the trailer. So I continued to follow for a little bit and after a bit I realized he wasn't pulling over. The vehicle, the trailer was swaying pretty heavily and I realized that he wasn't pulling over and initiated the pursuit." Exhibit A at 7.

25.     At that time Defendant Shoemaker activated his police sirens as well to alert Vinson. *Id.*

26.     During the preliminary hearing, Defendant Shoemaker testified as follows:

Q:     And so when you first made the decision to try to stop – turn on your lights and sirens in pursuit of this black pickup truck, the infraction you were investigating was exclusively the red light violation that you saw?

A:     At that point in time, yes.

Q:     You said at that point in time.
        Did that change?

A:     As we went down the road and he didn't stop, obviously (unintelligible) I also believed that he was intoxicated due to the vehicle swerving and not maintaining his lane and the way the trailer was not fully connected to the vehicle. I believed there was a good possibility he was possibly intoxicated.

Exhibit A at Page 18-19.

27.     The pursuit lasted approximately ten miles.

7

28.     Defendant Shoemaker testified that "Stone Road then turns into Westfields Boulevard, turns into Centerville Road" and that "[w]e stayed straight on that road for the duration of the pursuit."

29.     Defendant Shoemaker further testified that "[h]e ran several red lights, you know, exceeded the speed limit" and that "[w]e went through multiple intersections, through, you know, some red lights." *Id.* At 9.

30.     The speed limit was 40 and 45 miles per hour but upon information and belief Vinson, Shoemaker, and the Other FCPD vehicles in pursuit driven by JDPOs 1-4 reached speeds into or exceeding 60 miles per hour.

31.     While being chased by Defendants, Vinson drove recklessly, endangering others on the roads by speeding, weaving in and out of traffic and having a loosely coupled trailer that was swaying and from which sparks were flying, all of which was plainly visible to Defendant Shoemaker and JDPOs 1-4.

32.     The police pursuit was captured on the dashboard camera of a FCPD police car participating in the pursuit.

33.     The police pursuit involved multiple police cars driven by Defendant Shoemaker and JDPOs 1-4, and a police helicopter.

34.     Shoemaker testified that Vinson never gave him any indication that he was going to pull over and stop, only that he was going to continue to flee.

35.     Shoemaker further testified that he believed the trailer was not fully connected to the truck, and Shoemaker testified that he was most concerned that the trailer was going to come unhitched. Despite this fear, and the obvious danger such a possibility posed to the public, Shoemaker and the other FCPD officers persisted in the pursuit, running red lights at excessive

speeds, driving in a reckless and grossly negligent fashion, deliberately indifferent to the dangers posed to the safety of innocent civilians such as Ms. Duale and her children, consistently disregarding their duty of care owed to innocent civilians.

36.     The FCPD police pursuit was extremely dangerous and created a clear and unreasonable danger to the public as Defendant Shoemaker knew Vinson was driving erratically at excessive speeds while there was heavy traffic, through red lights and while Vinson's truck had a loosely coupled swaying trailer from which sparks were flying, the vehicles were weaving in and out of traffic, and Vinson refused to stop for over 10 miles.

37.     Shoemaker testified that after about a ten mile chase, Vinson's vehicle ran a red light on Frying Pan Road, while still being chased by Defendant Shoemaker and JDPOs 1-4, where it collided violently with the van driven by Plaintiff.

38.     At the time of the collision, at approximately 8:00 p.m. on December 27, 2017, Plaintiff had a green light and clearly had the right of way in the intersection of Frying Pan Road and Centreville Road. Because of the speeds involved in the police chase, Plaintiff never saw Vinson enter the intersection through a red light and had no clear opportunity to avoid the collision.

39.     The force of the crash caused Plaintiff's daughter, AD to be ejected from the vehicle and the force of the crash caused injury to all occupants of the vehicle, including Plaintiff, and extensive damage to Plaintiff's vehicle.

40.     The van carried Plaintiff and five children. Plaintiff, her daughters, her son, and an unrelated minor were injured in the crash. The Defendants' reckless, conscious disregard for the safety of the public by running red lights at excessive speeds, driving in a reckless and

grossly negligent fashion, deliberately indifferent to the dangers posed to innocent civilians was the direct proximate cause of these injuries.

### FCPD Policies Governed the FCPD Defendants' Conduct

41.     On December 27, 2017, FCPD officers were charged with operating under the policy of the FCPD (5.01.XI.A, 10-25-13, P.17 et seq) which states:

> A pursuit is justified when the officer knows or has reasonable suspicion to believe that a suspect has committed or is attempting to commit a crime or a traffic infraction and refuses to stop when given a signal to do so and the necessity of immediate apprehension for the crime or traffic infraction outweighs the level of danger created by the pursuit. Supervisors and pursing officers must take into consideration the potential risk of death or serious injury to any person created by the pursuit itself.

42.     Section B of that policy requires a supervisor to acknowledge awareness of the pursuit and assume incident command and give direction to continue or terminate the pursuit. While a supervising officer actively involved in the pursuit may assume command and control, a higher ranking officer can take over.

43.     Section C of that policy indicates that the decision "to abandon a pursuit may be the most prudent course of action." It specifically charges an officer or supervisor to make the decision to terminate the chase when (1) "... there is a clear and unreasonable danger to the officer and others that outweighs the necessity for immediate apprehension" and (2) "[i]f the prevailing traffic, roadway, and environmental conditions indicate the futility of continued pursuit."

44.     Further, that the FCPD policy states in Section I, "when a police helicopter enters the pursuit, other pursuing officers should reduce their speed and maintain radio contact with the aircraft enabling the helicopter to direct and coordinate the pursuit." The policy identifies three exceptions to this rule where (1) it is likely the pursued vehicle will be able to evade the

10

helicopter; (2) the terrain would enable the pursued vehicle to be easily concealed from the aircraft's view; or (3) where the suspect is wanted for "a serious felony and their immediate apprehension is necessary once the vehicle is stopped." None of these exceptions appears to apply on the instant facts.

45.     Defendant Shoemaker, FCPD, and JDPOs 1-4 violated the aforementioned FCPD policies and their actions constitute grossly negligent conduct, recklessness, deliberate indifference to the safety of the public, that endangered the public. Meanwhile, JDPO 5 completely abdicated his supervisory role by failing to take control of the situation and ensure that Defendant Shoemaker and JDPOs 1-4 acted consistent with FCPD guidelines and with due regard for the safety of the general public.

46.     Upon information and belief, Shoemaker was making the decisions about the continuation and/or termination of the pursuit.  Upon information and belief, there was no meaningful supervision of Shoemaker by FCPD.

47.     The FCPD's, Defendant Shoemaker's, and JDPOs 1-4s' pursuit constituted a deliberately indifferent disregard of public safety, recklessness, and actionable grossly negligent conduct.  The FCPD and Shoemaker had numerous opportunities to cease the police chase but did not do so even though they admit that : 1) the chase was instituted and continued because of a simple traffic violation, 2) the chase involved high speeds well in excess of the posted speed limit, 3) the chase occurred at night with limited visibility, 4) the chase occurred on a busy road with members of the public present, 5) the chase involved multiple instances of Vinson and officers driving through red lights, 6) the chase was prolonged and continued for at least 10 miles on often crowded roads, 7) the chase involved conduct that repeatedly put the public in danger;

8) the chase eventually had helicopter support that could have directed and coordinated the pursuit and 9) other jurisdictions had declined to join such a pursuit.

48.     Indeed, despite the fact that a FCPD helicopter was present and could have followed Vinson's vehicle without the need for a high-speed chase, Defendants Shoemaker and JDPOs 1-4 ignored reasonable police practices, acted with utter disregard for public safety, and continued to pursue the chase for ten miles even after multiple attempts to stop Vinson failed. These attempts included laying down tracks to puncture Vinson's tires and attempts to box Vinson's vehicle in.  When these efforts failed, Defendant Shoemaker and JDPOs 1-4 continued the pursuit through red lights and with increasingly heavy traffic until the entirely predictable crash occurred.

49.     The pursuit should have been terminated because the risk to the public outweighed any need to immediately apprehend someone suspected of a traffic violation.

50.     Upon information and belief, it is more likely than not that Vinson would have slowed down if Defendant Shoemaker and JDPOs 1-4 would have terminated the pursuit.

51.     It is highly unlikely that Vinson would have slowed as long as the pursuit continued.  In fact, he did not and the pursuit continued until the entirely foreseeable crash occurred.

52.     The continued pursuit was reckless, deliberately indifferent to injury of the innocent public, unnecessary, violated policy and commonly recognized and established police practices.

53.     The reckless, grossly negligent, and unnecessary pursuit conducted with utter disregard for public safety was a proximate cause of the collision between Vinson's and Duale's vehicles.

54.    As a direct and proximate result of the above described collision and the Defendants' gross negligence , as described above, Plaintiff was caused to suffer serious injuries; has suffered emotional distress, pain and suffering of the body and mind, both temporary and permanent; has incurred and may in the future incur medical and related expenses; has been left with a permanent partial disability; and was deprived of the potential for future earnings as a result of having to be the main caretaker for her daughter, AD, who was severely injured in the presence of Ms. Duale in the crash causing an extended hospitalization and rehabilitation in a second hospital in Baltimore, Maryland, (while her home was in Herndon, VA) for which Plaintiff stayed with her virtually 24 hours a day until her discharge.

55.    Plaintiff was forced to have two of her young daughters stay with relatives in Canada to be cared for during AD's hospitalization causing great distress to Plaintiff and her entire family and disrupting the entire family dynamic.

### Defendant Vinson's Negligent Operation of a Motor Vehicle Endangered Plaintiff

56.    It was the duty of Vinson to operate his Vehicle free from negligence and with regard for the safety of the Plaintiff and of other persons on the road.

57.    It was also the duty of Vinson to operate a vehicle that was free of dangerous conditions.

58.    Notwithstanding his duties of care, Vinson breached these duties, by willfully, wantonly, and with reckless disregard for the safety of others, operated his Vehicle so as to cause injury to the Plaintiff and her passengers.

59.    Vinson was negligent in the operation of the vehicle he was driving in that he, among other things:

(a)     failed to drive a vehicle that was free from dangerous conditions by having an unsecured trailer hooked to the rear of the vehicle;

(b)     failed to obey the speed limit (45 mph) and exceeded the speed limit so as to endanger Plaintiff, her passengers and others on the roadway;

(c)     failed to obey traffic signs and signals (red lights and stop signs);

(d)     failed to pay full time and attention to his driving;

(e)     failed to keep a proper lookout;

(f)     failed to operate the vehicle he was driving in a safe manner under the conditions then and there prevailing;

(g)     failed to keep the vehicle he was driving under proper control and drove a vehicle in such an improper manner so as to endanger Plaintiff, her passengers and others on the roadway; and,

(h)     drove in a reckless and aggressive manner so as to endanger Plaintiff, her passengers and others on the roadway;

(i)     disregarded a signal by a law enforcement officer to stop and alluded police in a willful, wanton and reckless disregard of such signal so as to endanger the police and others on the roadway, including Plaintiff and her passengers.

## COUNT I - GROSS NEGLIGENCE
(As against Defendants Shoemaker, FCPD, and John Doe 1, John Doe 2, John Doe 3, and John Doe 4)

60.     All of the preceding paragraphs are reinstated herein as if set forth in full herein.

61.     Defendants Shoemaker, FCPD, and JDPOS 1-4 owed a duty to Plaintiff to exercise due care under the circumstances in their roles as police officers.

14

62.    These Defendants' actions in pursuing the above described police chase for approximately ten miles, in the dark, through stop lights and above the posted speed limits, and when officers did not suspect that Vinson had engaged in any serious or violent crime constitutes grossly negligent conduct, reckless and deliberately indifferent to the dangers posed to the innocent public, and was a breach of the duty of reasonable care owed under the circumstances.

63.    As a direct and proximate result of the above referenced grossly negligent conduct and actions of the Defendant Police Officers, Plaintiff suffered extensive injury and has been damaged in the amount of not less than $10,000,000.00 as set forth in the Prayer for Relief, below.

## COUNT II - GROSSLY NEGLIGENT SUPERVISION
### (As against Defendants FCPD, Roessler, and John Doe Police Officer 5) ,

64.    All of the preceding paragraphs are reinstated herein as if set forth in full herein.

65.    Defendants Roessler and JDPO 5 owed a duty to exercise reasonable care under the circumstances in his/her roles as supervising police officer overseeing the actions of Defendant Shoemaker and JDPOs 1-4, and the overall situation that unfolded on the evening of December 27, 2017 as described herein. As a result, Defendants Roessler and JDPO 5, had the duty of reasonable care, which included, but was not limited to the duty to reasonably supervise the FCPD officers involved in the pursuit.

66.    Defendants Roessler and JDPO 5 breached their duties owed to Plaintiff when they failed to properly supervise the pursuit and permitted Defendant Shoemaker and JDPOs 1-4 to continue the pursuit of Vinson when it was clear that there was an unreasonable risk to the public, Defendant Vinson was suspected of nothing more than a traffic infraction, there was no immediate and imminent need to apprehend Defendant Vinson, the darkness and other factors led to limited visibility, the pursuit was occurring on a busy road with members of the public

15

present, Vinson and the officers chasing him had already driven through multiple red lights, and other jurisdictions had affirmatively declined to join in such a risky and unnecessary pursuit. Had the Police discontinued pursuit, Vinson likely would have either secured the trailer and discontinued speeding, running red lights and driving erratically without the threat of being pulled over by the police imminently.

67.    Defendants Roessler's and JDPO 5's actions in pursuing the above described police chase for approximately ten miles, in the dark, and when officers did not suspect that Vinson had engaged in any serious or violent crime constitutes willful, wanton, reckless, and grossly negligent conduct undertaken with utter disregard for the public safety. Defendants Roessler and JDPO 5 failed to adequately supervise the pursuing FCPD officers, including Defendant Shoemaker and JDPOs 1-4. This failure in supervision includes but is not limited to allowing the officers to continue a police chase on major roadways through multiple red lights in the presence of the public when there was a clear and unreasonable danger of harming the public.

68.    As a direct and proximate result of the grossly negligent and reckless supervision and actions of Defendants, Plaintiff suffered extensive injury and has been damaged in the amount of $10,000,000.00 as set forth in the Prayer for Relief, below.

## COUNT III - GROSSLY NEGLIGENT TRAINING
### (As against Defendants FCPD, Roessler)

69.    All of the preceding paragraphs are reinstated herein as if set forth in full herein.

70.    Defendants Shoemaker and JDPOS 1-4 actions in pursuing a police chase for approximately ten miles, in the dark, at excessive speed, by ignoring stop lights and when officers did not suspect that Vinson had engaged in any violent crime constitutes grossly negligent and reckless conduct. Defendants FCPD and Roessler, its Chief of Police, owed a duty to Plaintiff and others of exercising reasonable care to adequately train FCPD officers, including

Defendant Shoemaker and JDPOS 1-4 to observe the requirements of the FCPD for police pursuits and the commonly accepted rules for police pursuits. Here, Defendants FCPD and Roessler failed to properly train Defendant Shoemaker and the other JDPOs of the aforementioned rules and policies. This failure in training includes but is not limited to failing to train officers regarding the decision when and when not to conduct police chases in order to protect the public; how to best protect the public when engaged in a police chase; and best practices and procedures to be employed during a police chase.

71.     Defendants breached their duty of reasonable care owed to Plaintiff by their failure to properly train and develop training methods for police officers with regard to police chase procedures that would have effectively protected the rights and safety of Plaintiff without interfering with legitimate law enforcement goals.

72.     In addition, Defendant Roessler breached his duty of care owed to Plaintiff by his failure to properly train and/or develop training methods, policies and procedures for the FCPD that would require, under the circumstances present on the night of December 27, 2017, his officers to curtail the pursuit of Defendant Vinson when it became clear that Vinson was not stopping, that there was an unreasonable risk to the public, that other jurisdictions were unwilling to accept such needless risk to the public by participating in the pursuit, and that less risky means of pursuing Vinson were available (e.g., the on-station police helicopter). By doing so, Defendant Roessler demonstrated an utter disregard of prudence that amounted to a complete neglect for Plaintiff's safety and rights.

73.     As a direct and proximate result of the grossly negligent and reckless training and actions by Defendant Roessler, Plaintiff suffered extensive injury and has been damaged in the amount of $10,000,000.00 as set forth in the Prayer for Relief, below.

## COUNT IV – 42 U.S.C. § 1983 CLAIM BY PLAINTIFF
### (As against Defendants Shoemaker, FCPD, Roessler, and JDPOs 1-5)

74.    All of the preceding paragraphs are reinstated herein as if set forth in full herein.

75.    Defendants, acting within the course and scope of their employment, under the color of state law and pursuant to the customs, policies and practices of Fairfax County and the Fairfax County Police Department, deprived Plaintiff of her rights, privileges and immunities under the Laws and Constitutions of the Commonwealth of Virginia and the United States, in particular her rights to be free from the exercise of excessive and unreasonable force under the Fourth and Fourteenth Amendments to the Constitution of the United States.

76.    As a direct and proximate result of the intentional and/or reckless actions of the police Defendants, Plaintiff suffered the injuries described above.

77.    Defendants' violation of Plaintiff's right to be free from excessive and unreasonable force and substantive due process establishes a cause of action under 42 U.S.C. § 1983 for violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution, and justifies the award of monetary relief consisting of compensatory damages in the amount of $10,000,000 (ten million dollars), punitive damages in the amount of $350,000 (three hundred and fifty thousand dollars), and the award of attorney fees and costs.

## COUNT V - GROSS NEGLIGENCE
### (As against Defendant Vinson)

78.    All of the preceding paragraphs are reinstated herein as if set forth in full herein.

79.    Defendant Vinson's actions in fleeing the police for approximately ten miles, in the dark, at excessive speeds, while ignoring traffic control devices, and on a populated and busy roadway constitutes grossly negligent conduct.

80.     Defendant Vinson owed a duty to Plaintiff and others of exercising reasonable care under the circumstances.

81.     Defendant Vinson grossly breached the duty of reasonable care owed to Plaintiff by, *inter alia*:

(a)     failing to drive a vehicle that was free from dangerous conditions by having an unsecured trailer hooked to the rear of the vehicle;

(b)     failing to obey the speed limit (45 mph) and exceeded the speed limit so as to endanger Plaintiff, her passengers and others on the roadway;

(c)     failing to obey traffic signs and signals (red lights and stop signs);

(d)     failing to pay full time and attention to his driving;

(e)     failing to keep a proper lookout;

(f)     failing to operate the vehicle he was driving in a safe manner under the conditions then and there prevailing;

(g)     failing to keep the vehicle he was driving under proper control and drove a vehicle in such an improper manner so as to endanger Plaintiff, her passengers and others on the roadway;

(h)     driving in a reckless and aggressive manner so as to endanger Plaintiff, her passengers and others on the roadway; and

(i)     disregarded a signal by a law enforcement officer to stop and alluded police in a willful, wanton and reckless disregard of such signal so as to endanger the police and others on the roadway, including Plaintiff and her passengers.

82.     As a direct and proximate result of the grossly negligent conduct and actions of the Defendant Vinson, Plaintiff suffered extensive injury and has been damaged in the amount of $10,000,000.00 as set forth in the Prayer for Relief, below.

83.     Defendant Vinson's gross negligence entitles Plaintiff to punitive damages in an amount not less than $350,000.00

## COUNT VI - NEGLIGENCE
### (In the Alternative - As against Defendant Vinson)

84.     All of the preceding paragraphs are reinstated herein as if set forth in full herein.

85.     Defendant Vinson's actions in fleeing the police for approximately ten miles, in the dark, at excessive speeds, while ignoring traffic control devices, and on a populated and busy roadway constitutes negligent conduct.

86.     Defendant Vinson owed a duty to Plaintiff and others of exercising reasonable care under the circumstances.

87.     Defendant Vinson breached the duty of reasonable care owed to Plaintiff by, *inter alia*:

(a)     failing to drive a vehicle that was free from dangerous conditions by having an unsecured trailer hooked to the rear of the vehicle;

(b)     failing to obey the speed limit (45 mph) and exceeded the speed limit so as to endanger Plaintiff, her passengers and others on the roadway;

(c)     failing to obey traffic signs and signals (red lights and stop signs);

(d)     failing to pay full time and attention to his driving;

(e)     failing to keep a proper lookout;

(f)     failing to operate the vehicle he was driving in a safe manner under the conditions then and there prevailing;

(g) failing to keep the vehicle he was driving under proper control and drove a vehicle in such an improper manner so as to endanger Plaintiff, her passengers and others on the roadway;

(h) driving in a reckless and aggressive manner so as to endanger Plaintiff, her passengers and others on the roadway; and

(i) disregarded a signal by a law enforcement officer to stop and alluded police in a willful, wanton and reckless disregard of such signal so as to endanger the police and others on the roadway, including Plaintiff and her passengers.

88. As a direct and proximate result of the negligent conduct and actions of the Defendant Vinson, Plaintiff suffered extensive injury and has been damaged in the amount of $10,000,000.00 as set forth in the Prayer for Relief, below.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

A. Compensatory damages under Virginia common law in the amount of $10,000,000.00 (Ten Million Dollars) for the following:

1. Physical and emotional pain and suffering as a result of the injuries Plaintiff suffered;

2. Emotional distress as a result of having observed the significant injuries to her family members who were inflicted in her presence;

21

3.    Expenses for the care, treatment, and hospitalization of Plaintiff incident

to the collision described herein; and

4.    Compensation for reasonable expected loss of income

B.    Punitive Damages under Virginia common law in the amount of not less than

$350,000.00 (Three Hundred and Fifty Thousand Dollars);

C.    Reasonable attorney fees pursuant to 42 U.S.C. § 1983;

D.    Interest on any damage award from December 27, 2017, as well as any taxable

costs and court costs; and,

E.    Any further relief as the Court may deem just and equitable under the

circumstances of this case.

Date: 20 DEC 19                         Respectfully Submitted,

By counsel:

Billy B. Ruhling, II, Esq. (VSB No. 45822)
M. Jarrad Wright, Esq. (VSB No.
DiMuroGinsberg, PC
1101 King Street, Suite 610
Alexandria, Virginia 22314
(703) 684-4333 (telephone)
(703) 684-3181 (facsimile)
bruhling@dimuro.com
mjwright@dimuro.com

*Counsel for Filsan Duale*

22